IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
OHIO EASTERN DIVISION

Benjamin Hendricks                  :
and Robert Austin,

                                    :    Civil Action 2:12-cv-0729
                 Plaintiff

                                    :    Judge Smith
     v.

                                    :    Magistrate Judge Abel
John Kasich, *et al.*,

                                    :
                 Defendants

                                    :

**INITIAL SCREENING
REPORT AND RECOMMENDATION**

Plaintiffs Benjamin Hendricks and Robert Austin, inmates at the Pickaway

Correctional Institution, bring this prisoner civil rights action under 42 U.S.C. §1983.

This matter is before the Magistrate Judge for a Report and Recommendation on initial

screening of the complaint pursuant to 28 U.S.C. §1915A(a) and (b)[1] and 42 U.S.C.

_____

[1]The full text of §1915A reads:

> (a) Screening.--The court shall review, before dock-
> eting, if feasible or, in any event, as soon as practicable after
> docketing, a complaint in a civil action in which a prisoner
> seeks redress from a governmental entity or officer or
> employee of a governmental entity.

> (b) Grounds for Dismissal.--On review the court shall
> identify cognizable claims or dismiss the complaint, or any
> portion of the complaint, if the complaint--

> > (1) is frivolous, malicious, or fails to state a
> > claim upon which relief may be granted; or

> > (2) seeks monetary relief from a defendant who

§1997e(c) to identify cognizable claims, and to dismiss the complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. The Magistrate Judge finds that plaintiffs Hendricks and Austin have improperly joined as parties plaintiff, that the complaint fails to state a claim upon which relief may be granted against defendants Mona Parks, Dr. Hale, Dr. Khan, and Anthony Ayres, that at the initial screening stage the complaint states a claim against defendants Governor John Kasich, Gary Mohr, Andrew Eddy, and John Gardner, and therefore **RECOMMENDS** dismissal of the complaint as to the defendants Mona Parks, Dr. Hale, Dr. Khan, and Anthony Ayres and that suit continue as to defendants Kasich, Mohr, Eddy and Gardner. The Clerk of Court is **DIRECTED** to open a separate case for plaintiff Robert Austin, filing a copy of the complaint here and this Report and Recommendation in that new case file.

The complaint names as defendants Governor John Kasich; Gary Mohr, Director, Ohio Department of Rehabilitation and Correction ("ODRC"); Andrew Eddy, Medical Director, ODRC; John Gardner, Chief Medical Officer, ODRC; Mona Parks, Assistant

---

is immune from such relief.

(c) Definition.--As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentence for, or adjudicated delinquent for, violations of criminal law or terms and conditions of parole, probation, pretrial release, or diversionary program.

Chief Inspector (Medical), ODRC; Dr. Hale, Chief Medical Officer, Pickaway Correctional Institution ("PCI"); Dr. Khan, Long Term Care/Chronic Care physician, PCI; and Anthony Ayres, Health Care Administrator/Medical Operations Manager, PCI. It alleges the following facts and claims, summarized separately as to each plaintiff.

**<u>Benjamin Hendricks</u>**

Defendants have denied Hendricks necessary and/or prescribed medical care for his left shoulder prothesis, Crohn's disease, diversion colitis, ventral & parastomal hernias, and pain. Complaint, ¶¶ 31-64. Each of these medical conditions are discussed briefly below.

<u>Left shoulder prosthesis</u>. In March 2010, the Ohio State University Medical Center and the Orthopedic and Surgery Clinics at the Corrections Medical Center determined that Hendricks needed surgery to repair damage to a prosthetic implant in his left shoulder. Surgery was scheduled for June 2010, then cancelled without explanation. Complaint, ¶¶ 33-37. Two years later Hendricks had a meeting at the Pickaway Correctional Institution with nurse supervisor Connie Ostrander, Q.I.C. Missy Rousch, and defendants Ayres, Khan and Hale during which he "was informed that his shoulder was deemed inoperable by Defendants Eddy and Gardner." Complaint, ¶ 38. Hendricks told them that the explanation was untrue because the earlier specialist consultations found he needed the surgery; and they told him "that the problem would be 'looked into' and he would be informed about a decision when one was made which was subsequently denied." Complaint, ¶¶ 39-40.

3

<u>Crohn's disease</u>. In September 2008, Hendricks was prescribed Remicade® for abdominal pain, diarrhea, malabsorption, fistula formation, and bloody stool. After several infusions the treatment was stopped but Hendricks experienced numerous flareups that caused excruciating pain, bleeding, and other problems. He has repeatedly asked for and been denied treatment. Complaint, ¶¶ 41-46. "After two (2) years of complaints, Hendricks finally had a 'meeting' with" nurse supervisor Connie Ostrander, Q.I.C. Missy Rousch and defendants Ayres, Khan, and Hale, who told him "that he had a teleconference scheduled to determine a course of treatment." Complaint, ¶ 47.

<u>Diversion colitis</u>. During recovery from a November 2009 surgery to repair a parastomal hernia, doctors discovered Hendricks suffered from diversion colitis. An OSU Medical Center gastroenterologist recommended treatment with a short-chain fatty-acid enema, which was started but discontinued when he returned to the PCI. After two years of complaints, the treatment was resumed. However, it had to be discontinued when Hendricks experienced trauma during one of the treatments. By the time he was capable of resuming the treatment, the enema had expired and needed to be reordered. It has not yet been resumed. Complaint, ¶¶ 48-53.

<u>Ventral and parastomal hernias</u>. About 6-7 months after the November 2009 hernia repair surgery, the repair failed. Hendricks also developed a ventral hernia. Due to circumstances beyond his control, Hendricks was unable to keep a February 14, 2011 appointment at the Surgery Clinic. Later defendant Mona Parks, Assistant Chief Inspector (Medical) for ODRC, concluded he should be reevaluated to determine whether

4

the surgery was still needed. Defendant John Gardner, Chief Medical Officer, ODRC, conducted the reevaluation and informed Hendricks that the surgery would not be performed until the hernias had become a medical emergency. After several more complaints, nurse supervisor Connie Ostrander, Q.I.C. Missy Rousch and defendants Ayres, Khan, and Hale met with Hendricks and told him that a speciality consult request would again be submitted. It was denied again. Complaint, ¶¶ 54-59.

Pain management. In addition to the painful medical conditions set out above, Hendricks suffers from painful degenerative disc disease at L-3, L-4, ostearthitis, sciatic nerve pain, and an old pelvic fracture. Complaint, ¶ 60. A former physician at PCI referred Hendricks to a pain clinic, but the consultation was denied without explanation. After two years of "excruciating, and sometimes debilitating, pain and numerous complaints," nurse supervisor Ostrander, Q.I.C. Rousch and defendants Ayres, Khan, and Hale met with Hendricks and told him that a speciality consult request would again be submitted. On May 3, 2012, defendant Dr. Hale informed Hendricks that the consult had been denied "and, as a last ditch effort, prescribed Neurontin/gabamentin for pain management." Complaint, ¶¶ 62-64.

**Plaintiff Robert Austin**

Austin has sought treatment for polycythemia vera, wound care, and pain management. The allegations regarding those conditions will be summarized below.

Polycythemia vera. In 1993, Austin was diagnosed with poycythemia vera, an incurable, life-threatening myeloproliferative disorder. Complaint, ¶¶ 65-67. He has not

5

been provided with the treatment needed to help control the disease. Complaint, ¶ 72. In February 2011, Austin underwent surgery to have a Mediport implanted. It needs to be flushed monthly to prevent infection and clotting problems, but has been flushed only twice. A February 23, 2012 attempt to flush the Mediport was unsuccessful because one of the two ports was clogged and could not be opened. Complaint, ¶¶ 75-78.

<u>Wound care</u>. Austin developed venous stasis ulcers that are poorly, slowly heal-ing ulcers for which he has been referred by his treating physician at PCI to a wound clinic at the Corrections Medical Center. One treatment ordered for the wounds is a boot-like dressing over the lower extremity. Defendant Gardner fitted Ausin with the dressing once. Complaint, ¶¶ 79-84. "Subsequent attempts at this treatment were futile because nobody seemed to want to do them or did not know how leaving Austin to perform his own wound care." Complaint, ¶ 85. As a result of his performing the wound care in an unsterile environment, Austin has had numerous infections. Com-plaint, ¶ 86.

<u>Pain management</u>. Although plaintiff has been referred to pain specialists by his treators, every request for a pain specialist consult has been denied by defendants with no reason given. He has been given pain medications that are contraindicated because of his hepatitis. "Since Defendant Kasich's cost cutting measures have been implement-ed by the other Defendants, Austin has been reduced to 100 mg. of Ultram TID (3x day) compared to his previous prescriptions of 100 mg. of Ultram QID (4 x day), 10 mg. of Roxonol (morphine sulphate) once a day as needed, 50 mg. of Elavil at night, and 800

mg. of Ibuprofen." Complaint, ¶ 90.

<u>Causes of Action pleaded by both plaintiffs</u>. The first cause of action pleads that plaintiffs' Eighth Amendment rights were violated when defendants Governor Kasich and Gary Mohr "implemented cost cutting measures that have had a direct and detrimental effect on the medical care received by all inmates in the custody and/or care of Ohio prisons." Complaint, ¶¶ 95-96. The individual defendants' actions violated plaintiffs' rights under the Eighth Amendment. to the Constitution of the United States. Complaint, ¶¶ 97-99. The second cause of action seeks a declaratory judgment that defendants not deny them treatment or medical care prescribed by specialists. Complaint, ¶¶ 100-106.

Rule 8(a), Federal Rules of Civil Procedure provides for notice pleading. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The United States Supreme Court held in *Erickson v. Pardus,* 551 U.S. 89, 93 (2007):

> . . . Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts showing that the pleader is entitled to relief are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.': *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Moreover, *pro se* complaints must be liberally construed. *Erickson*, 551 U.S. at 94; *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). Nonetheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Twombly,* 550 U.S. at 570." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

<u>Prisoners' right to medical treatment</u>. The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs. There is both an objective and a subjective component to a cruel and unusual punishment claim. *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009). The objective component requires a plaintiff to demonstrate that the medical need was "serious." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). To meet the subjective component, a complaint must plead "facts which show that the prison official had a 'sufficiently culpable state of mind.' [*Brennan v.*] *Farmer,* 511 U.S. [825], 834 [(1994)]; *Comstock* [*v. McCrary,* 273 F.3d 693], 834 [(6th Cir. 2001)." Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence does not constitute deliberate indifference. *See, Estelle*, 429 U.S. at 106. Further, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis or treatment. *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

8

Nonetheless, prison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment.  Deliberate indifference may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir.2002)(quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *see also Chance v. Armstrong*, 143 F.3d 698, 704 (2d Cir. 1998).  A complaint states a claim when it alleges that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to un-due suffering or the threat of tangible residual injury." *Westlake*, 537 F.2d at 860; *Scott v. Ambani*, 577 F.3d at 648.

**Analysis.** The claims of plaintiffs Benjamin Hendricks and Robert Austin will be discussed separately below.

**Benjamin Hendricks**

Right shoulder prosthesis. In March 2010, specialists determined that Hendricks needed surgery to repair damage to a prosthetic implant in his left shoulder. The surgery was scheduled, but canceled.  In or around June 2012, defendants Ayres, Khan and Hale informed Hendricks that defendants Eddy and Gardner deemed his shoulder inoperable. Complaint ¶¶ 33-40.

At the initial screening stage, the complaint states a claim against defendants ODRC Medical Director Andrew Eddy and ODRC Chief Medical Officer John Gardner,

9

because they denied Hendricks surgery that specialists determined he needed. It does not state a claim against defendants PCI Health Care Administrator Anthony Ayres, PCI Long Term Care/Chronic Care Physician Dr. Khan, or PCI Chief Medical Officer Dr. Hale, who merely informed Hendricks of the decision made by Eddy and Gardner.

Crohn's disease. The complaint alleges that Hendricks repeatedly asked for but was denied treatment for Crohn's disease. Complaint ¶¶ 41-46. It does not allege the dates he sought treatment, the dates treatment was denied, or the identity of the person(s) denying him treatment. Consequently, the complaint does not give any individual defendant fair notice of the claim pleaded against him or her.

The complaint further alleges that Hendricks met with defendants Ayres, Khan and Hale, who told him he had a teleconference scheduled to determine the course of treatment for his Crohn's disease. Complaint ¶ 47. That allegation does not state a claim that these defendants denied plaintiff necessary treatment for a serious medical condition. Rather, they informed him he had an upcoming teleconference to determine how his Crohn's disease should be treated.

Diversion colitis. The complaint alleges that a specialist recommended treatment with a short-chain fatty-acid enema that Hendricks has rarely received. Complaint ¶¶ 48-53. However, the complaint does not alleges the dates plaintiff sought and was refused the enemas or the name of the person(s) who denied him the treatment prescribed by the specialist. Consequently, the complaint fails to give fair notice of the claim to any named defendant.

10

<u>Ventral and parastomal hernias</u>. The complaint alleges that Hendricks under-went a surgical hernia repair that failed. He was scheduled for a surgery consult but missed the appointment because of circumstances beyond his control. Defendant Mona Parks, Assistant Chief Inspector later concluded that he should be reevaluated to determine whether surgery was still needed. Defendant John Gardner conducted the reevaluation and decided that the surgery would not be performed until Hendricks' hernias became a medical emergency. Defendants Ayres, Khan and Hale met with Hendricks and told him a request for a specialist consult would again be made. It was denied. Complaint ¶¶ 54-59.

At the initial screening stage, the complaint states a claim against defendant Gardner, but not against defendants Parks, Ayres, Khan, or Hale. Gardner is alleged to have denied Hendricks surgery specialists determined he needed. Parks only role was to make a decision on a grievance. Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged retaliatory behavior" cannot be liable under §1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982). The complaint here only alleges that Parks' role was to make a decision on a grievance. Finally, the complaint does not allege that defendants Ayres, Khan or Hale did anything to deny Hendricks treatment for his hernias.

<u>Pain management</u>. Although the complaint alleges that defendants Ayres, Khan and Hale requested a consult by a pain management specialist, it was denied. Dr. Hale

11

then prescribed Neurontin/gabamentin in an attempt to manage Hendricks' pain. Complaint, ¶¶ 60-64. These allegations are insufficient to state a claim against defendants Ayres, Khan or Hale because it points to no conduct by them that denied plaintiff a consult with a pain specialist or that otherwise denied him treatment for a serious medical need.

<u>Additional allegations</u>. The complaint alleges that defendants Governor Kasich and Gary Mohr "implemented cost cutting measures that have had a direct and detrimental effect on the medical care received by all inmates in the custody and/or care of Ohio prisons." Complaint, ¶¶ 95-96. At the initial screening stage, these allegations are sufficient to state a claim that these defendants' conduct denied Hendricks treatment prescribe by specialists for serious medical needs.

## Robert Austin

<u>Polycythemia vera, wound care, and pain management</u>. The complaint fails to allege dates any individual defendant denied Austin treatment for these conditions. Consequently, it fails to give any individual defendant fair notice of a claim that he or she denied Austin needed treatment for a serious medical need. The complaint does allege that defendant Gardner fitted Austin with a dressing for his venous stasis ulcers once, but it does not allege that he refused to treat the ulcers at any time nor, if he had, the date of that refusal. Complaint, ¶¶ 79-85. The pain management allegations do included the allegation that Governor Kasich's cost cutting measures caused his prescribed pain medications to be reduced. Complaint, ¶ 90. Consequently, at the initial screen-

ing stage, the complaint does state a claim against defendant Kasich.

<u>Additional allegations</u>. The complaint alleges that defendants Governor Kasich and Gary Mohr "implemented cost cutting measures that have had a direct and detrimental effect on the medical care received by all inmates in the custody and/or care of Ohio prisons." Complaint, ¶¶ 95-96. At the initial screening stage, these allegations are sufficient to state a claim that these defendants' conduct denied Austin treatment prescribe by specialists for serious medical needs.

Accordingly, it is hereby **RECOMMENDED** for the reasons set out above that defendants Mona Parks, Dr. Hale, Dr. Khan, and Anthony Ayres be **DISMISSED** because the complaint fails to state a claim for a violation of the Eighth Amendment under 42 U.S.C. §1983 against them. These defendants need not respond to the complaint unless later ordered to do so by the Court.

The Magistrate Judge **FURTHER RECOMMENDS** that at the initial screening stage the complaint states a claim for violation of the Eighth Amendment against defendants Governor John Kasich; Gary Mohr, Director, Ohio Department of Rehabilitation and Correction ("ODRC"); Andrew Eddy, Medical Director, ODRC; and John Gardner, Chief Medical Officer, ODRC. These defendants are ORDERED to answer or otherwise respond to the complaint within forty-five (45) days of being served with summons and complaint.

**IT IS FURTHER ORDERED** that the United States Marshal serve upon each defendant named in part III, B and C of the form civil rights complaint a summons, a

13

copy of the complaint, and a copy of this Order.  Defendants are not required to answer the complaint unless later ordered to do so by the Court.

The Clerk of Court is DIRECTED to mail a copy of this Order to the Attorney General of Ohio, Corrections Litigation Section, 150 East Gay St., 16th Floor, Columbus, OH  43215.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  See 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to de novo review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Small v. Secretary of Health and Human Service*s, 892 F.2d 15, 16 (2d Cir. 1989).


                                        s/Mark R. Abel
                                        United States Magistrate Judge