## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Benjamin Hendricks,

     Plaintiff,

    v.

John Kasich, et al.,

    Defendants.

Case No. 2:12-cv-729

**JUDGE MICHAEL H. WATSON**
**Magistrate Judge Kemp**

## OPINION AND ORDER

Benjamin Hendricks and Robert Austin, state prisoners, filed this case alleging deliberate indifference to their serious medical needs during their incarceration at the Pickaway Correctional Institution.  A Magistrate Judge of this Court screened the complaint pursuant to 28 U.S.C. § 1915A and 42 U.S.C. §1997e and recommended that named defendants Mona Parks, Dr. Hale, Dr. Khan, and Anthony Ayres be dismissed because the complaint fails to state a claim against them for a violation of the Eighth Amendment under 42 U.S.C. § 1983.  The Magistrate Judge further concluded that, at least at the initial screening stage, the complaint stated a claim for violation of the Eighth Amendment against named defendants Governor John Kasich; Gary Mohr, Director of the Ohio Department of Rehabilitation and Correction; Andrew Eddy, ODRC Medical Director; and John Gardner, ODRC Chief Medical Officer.  The Magistrate Judge also directed the Clerk to open a separate case for plaintiff Robert Austin.  That case has since been opened as Case No. 2:12-cv-983, and

Mr. Austin's claims are being addressed in that case.

As far as this case is concerned, both Mr. Hendricks and Governor Kasich have filed objections to the Report and Recommendation. Governor Kasich also has filed a motion to dismiss which raises the same issues he raised in his objection. As a result, Governor Kasich's objection will be denied as moot and the issues raised will be addressed below with respect to the motion to dismiss. For the following reasons, the Court will overrule Mr. Hendricks' objections. Further, the motion to dismiss will be granted.

## I. Mr. Hendricks' Objections

When objections are received to a Magistrate Judge's Report and Recommendation on a dispositive matter, the assigned District Judge "shall make a de novo determination . . . of any portion of the magistrate judge's disposition to which specific written objection has been made . . . ." Fed. R. Civ. P. 72(b). After review, the District Judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(B). General objections are insufficient to preserve any issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991). As the Court of Appeals has noted, when specific objections are made, the District Judge's "statutory duty in social security appeals . . . [is to] make[] a

de novo review of the pertinent record; consider[] carefully the magistrate judge's report and recommendation; and then indicate[] his or her reasons, as briefly, succinctly and reasonably expressed as the case requires, for the court's decision." *Ivy v. Secretary of Health and Human Services*, 976 F.2d 288, 289-90 (6th Cir. 1992).

## A.

In the Report and Recommendation, with respect to Mr. Hendricks' claims against defendants other than Governor Kasich and Mr. Mohr, the Magistrate Judge concluded that the complaint states a claim against defendants Eddy and Gardner based on allegations that these defendants denied Mr. Hendricks shoulder surgery which specialists had determined was necessary. Further, the Magistrate Judge concluded that the complaint states a claim against defendant Gardner for allegedly denying Mr. Hendricks hernia surgery which specialists also had determined was necessary. However, the Magistrate Judge found that Mr. Hendricks had failed to state a claim against the remaining defendants with respect to his allegations relating to specific medical conditions including his right shoulder prosthesis, Crohn's disease, diversion colitis, ventral and parastomal hernias and pain management. The basis for these findings was either that these defendants played no role in the alleged denial of medical treatment or that the complaint fails to give fair notice of these claims to any named defendant.

## B.

Mr. Hendricks' objections to the Magistrate Judge's Report and Recommendation are set forth in a 21-page filing which raises several issues. First, Mr. Hendricks contends that the Magistrate Judge applied a heightened pleading standard in recommending the dismissal of his claims relating to the medical conditions of Crohn's disease and diversion colitis. Further, he argues that a liberal reading of the complaint indicates that defendants Ayres, Hale and Kahn were involved in the decisions to deny him medical care. With respect to Ms. Parks, he asserts that it is plausible that her decision on his grievance is part of a policy or custom and could be "considered an implicit authorization of or knowing acquiescence in the allegedly unconstitutional behavior alleged in the Complaint." Mr. Hendricks also argues that the Magistrate Judge failed to address his requests for counsel and class certification and requests that Mr. Austin be rejoined as a plaintiff in this action. Finally, Mr. Hendricks requests a 60-day extension to amend the complaint.

## C.

Turning first to the issue of the pleading standard, the Magistrate Judge explained the standard as follows:

> Rule 8(a) , Federal Rules of Civil Procedure provides for notice pleading. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The United States Supreme Court held in *Erickson v. Pardus*, 551 U.S. 89, 93 (2007):

> Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts showing that the pleader is entitled to relief are not necessary; the statement need only "'give the defendant fair notice of the . . . claim and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S.Ct. 1955 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

> Moreover, pro se complaints must be liberally construed. *Erickson*, 551 U.S. at 94; *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). Nonetheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Twombly*, 550 U.S. at 570." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Report and Recommendation, p. 7. This is the appropriate standard to be applied to the screening of prisoner complaints under 28 U.S.C. § 1915A(b)(1). *Hill v. Lappin*, 630 F.3d 468, 470-471 (6th Cir. 2010) ("the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under [§§1915A(b)(1) and 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)").

The Magistrate Judge specifically noted that Mr. Hendricks had not alleged dates he sought or was denied treatment or the names of the person(s) who denied him treatment. In his objections, Mr. Hendricks points to paragraphs in his complaint which he believes provide this information and which, he argues, the Magistrate Judge overlooked. The Court's review of these paragraphs, however, indicates that they do not contain any allegations indicating to which defendant these claims are directed. Absent allegations regarding any defendant's

involvement, the Court agrees with the Magistrate Judge that the complaint, with respect to these claims, does not give any individual defendant fair notice of the claim pleaded.  Consequently, Mr. Hendricks' objection that he was held to a heightened pleading standard will be overruled.

Mr. Hendricks also contends that, contrary to the Magistrate Judge's findings, a liberal reading of the complaint indicates that defendants Ayres, Hale and Kahn were involved in the decision-making process resulting in his receipt of inadequate medical care.  As with Mr. Hendricks' other claims, however, the Court's review of the complaint indicates otherwise.  As the Magistrate noted, the complaint contains the following allegations with respect to these defendants.

> Left shoulder prosthesis.
> Two years later Hendricks had a meeting at the Pickaway Correctional Institution with a nurse supervisor Connie Ostrander, Q.I.C. Missy Rousch, and defendants Ayres, Khan and Hale during which he "was informed that his shoulder was deemed inoperable by Defendants Eddy and Gardner."  Complaint, ¶38.  Hendricks told them that the explanation was untrue because the earlier specialist consultations found that he needed surgery; and they told him "that the problem would be 'looked into' and he would be informed about a decision when one was made which was subsequently denied."  Complaint, ¶¶39-40.

> Crohn's disease.
> After two (2) years of complaints, Hendricks finally had a 'meeting' with" nurse supervisor Connie Ostrander, Q.I.C. Missy Rousch and defendants Ayres, Khan, and Hale, who told him "that he had a teleconference scheduled to determine a course of treatment." Complaint ¶47.

> Ventral and parastomal hernias.
> After several more complaints, nurse supervisor Connie Ostrander,

Q.I.C. Missy Rousch and defendants Ayres, Khan, and Hale met with
Hendricks and told him that a specialty consult request would again be
submitted. It was denied again. Complaint, ¶¶54-59.

Pain management.
  After two years of "excruciating, and sometimes debilitating, pain
and numerous complaints," nurse supervisor Ostrander, Q.I.C. Rousch
and defendants Ayres, Khan, and Hale met with Hendricks and told him
that a specialty consult request would again be submitted. On May 3,
2012, defendant Dr. Hale informed Hendricks that the consult would be
denied "and, as a last ditch effort, prescribed Neurontin/gabamentin for
pain management." Complaint, ¶¶62-64.

Report and Recommendation, pp. 3-5. In his objection, Mr. Hendricks contends

that, because these defendants participated in what he terms the "'collegiate

review' process," they were "involved in the decision making process that has

rendered constitutionally inadequate medical care." *See* Objections, p. 15, fn. 8.

The Court does not agree that a liberal reading of the complaint supports Mr.

Hendricks' position. The complaint simply fails to allege that these defendants

engaged in any conduct that resulted in the denial of treatment for a serious

medical condition. Consequently, Mr. Hendricks' objection will be overruled.

  Similarly, the Court agrees with the Magistrate Judge that the complaint

fails to state a claim against Ms. Parks for the denial of medical treatment. As the

Magistrate Judge concluded, based on the allegations of the complaint, Ms.

Parks' only role was to make a decision on a grievance, an action for which she

could not be held liable under § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

In his objection, Mr. Hendricks argues that it is "plausible" that he "will be able to show after discovery that the Defendants' policies or customs are properly considered an implicit authorization of or knowing acquiescence in the allegedly unconstitutional behavior alleged in the Complaint." *See* Objection, p. 15. As Mr. Hendricks explains it, because the Magistrate Judge "accepted that Defendant Kasich and Mohr's budgetary constraints may generate Eighth Amendment violations . . . then those knowingly implementing those policies, in breach of their claimed medical ethics, must also necessarily act with deliberate indifference, including parties whose deliberate decisions . . . fulfill their obligations in the grievance process." *Id.* at 16. While creative, Mr. Hendricks' argument is not persuasive. Rather, the fact remains that the complaint alleges only that Ms. Parks' role was to make a decision on a grievance—conduct for which it is well-established that she cannot be held liable under § 1983. Consequently, Mr. Hendricks' objection will be overruled.

The Court will construe Mr. Hendricks' request that Mr. Austin be rejoined as a plaintiff as an objection to the Magistrate Judge's conclusion that Mr. Austin's claims should be pursued in a separate case. "[W]hen claims are unrelated, parties should not be allowed to join multiple plaintiffs." *Odom v. Hiland*, 2012 WL 6203966, *1 (W.D. Ky. December 12, 2012). Further, many courts have recognized that "the impracticalities inherent in multiple-prisoner litigation militate against the permissive joinder of prisoner plaintiffs otherwise

allowed by Rule 20(a)(1)." *Id. quoting Boretsky v. Corzine*, 2008 WL 2512916 (D.N.J. June 23, 2008). Here Mr. Hendricks and Mr. Austin do not assert claims arising out of the same transaction, occurrence, or series of events and they did not plead common questions of law or fact in their complaint, except to the extent that they are challenging "cost cutting measures that have had a detrimental effect on medical care." However, because the Eighth Amendment claims they plead arise out of different medical conditions, they simply do not share any common facts. Consequently, the Court agrees that Mr. Austin's claims should be pursued in a separate case and will overrule Mr. Hendricks' objection on this issue.

To the extent that Mr. Hendricks asserts that the Magistrate Judge erred by not appointing counsel, the Court does not agree. Because this action has not yet progressed to the point that the Court is able to evaluate the merits of his claims, there was no reason for the Magistrate Judge to appoint counsel. *Mars v. Hanberry*, 752 F.2d 254 (6th Cir. 1985). Additionally, to the extent that Mr. Hendricks has related this issue to the issue of class certification, his objection remains without merit. The Magistrate Judge was not required to, and did not, address the class action allegations in screening the complaint. Consequently, Mr. Hendricks' objection relating to these issues will be overruled.

Finally, with respect to Mr. Hendricks' request for an extension of time to amend the complaint, this request will be denied. It is well-established that

"[w]hen a complaint is subjected to screening, 'the district courts are not to permit plaintiffs to amend a complaint to avoid dismissal' under section 1915(e) and 1915A." *Parks v. Reans*, 2013 WL 59474, *2 (6th Cir. January 7, 2013) *quoting Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999).

## II. Governor Kasich's Motion to Dismiss

### A.

Governor Kasich has moved to dismiss the claims against him under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In his motion to dismiss, Governor Kasich contends that any claims addressed to him in his official capacity are barred by the Eleventh Amendment. Further, he asserts that the complaint does not allege any conduct from which it could be concluded that he acted with deliberate indifference to Mr. Hendricks' serious medical needs. Rather, Governor Kasich argues that Mr. Hendricks simply is attempting to hold him liable under a theory of respondeat superior, a theory which cannot be used to impose individual liability under § 1983. Finally, Governor Kasich notes that other Eighth Amendment lawsuits seeking to hold him liable solely on the basis of his state budget responsibilities have been dismissed by this Court.

The focus of Mr. Hendricks' response appears to be the issue of Eleventh Amendment immunity. His argument on this issue appears in the final two paragraphs of his 10-page response and states verbatim:

All defendants have been named in both their ***individual*** and ***official***

capacities.   Since Eleventh Amendment immunity does not cover *individual* capacity, Defendants are not immune from monetary damages.   However, in their *official* capacity, Eleventh Amendment immunity does play a significant factor unless, as here, the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Brunner*, at 474.

Plaintiffs in this case have asked for monetary damages from the Defendants in their *individual capacity only*.   Under the heading **RELIEF REQUESTED**, the relief requested is purely prospective in nature (*Ex parte Young*) with the exception of #5, which applies to the Defendants in their *individual capacity*.   Therefore Eleventh Amendment immunity does not apply here as Defendants assert.

To the extent that Mr. Hendricks addresses the issue of respondeat superior liability in response to Governor's Kasich's argument, he asserts that he is not making "merely a respondent superior argument as Defendants state." Rather, relying on *Monell v. Dept. of Soc. Services of City of N.Y.*, 436 U.S. 658 (1978), he asserts that "[t]his is a claim where 'A's tort became B's liability [because] B 'caused' A to subject another to a tort . . . ."

In reply, Governor Kasich reiterates that the Eleventh Amendment bars all claims against him in his official capacity.  With respect to Mr. Hendricks' argument that he is seeking prospective relief, so that the *Ex parte Young* exception applies here, Governor Kasich disagrees.  As Governor Kasich reads the complaint, Mr. Hendricks is seeking only damages and declaratory relief against him, claims which he contends are retrospective.  To the extent that the complaint contains any claims for prospective injunctive relief, Governor Kasich asserts that these claims are not addressed to him because they do not relate to

his role in the state's budget process.  Further, Governor Kasich argues that

because he does not  have a direct connection to the enforcement of any state

law or policy governing inmates' medical care, the *Ex parte Young* exception

does not apply here to allow any claims to proceed against him.  Finally,

Governor Kasich continues to assert that he cannot be held individually liable

based on his role with respect to the State budget.

## B.

The Court will turn first to the argument that this Court lacks subject matter

jurisdiction over Mr. Hendricks' claims against Governor Kasich in his official

capacity.  As recently explained by Judge Sargus in *Machisa Design Services,*

*Inc. v. Board of Educ. of School Dist. of the City of Columbus*, 2013 WL 80273

(S.D. Ohio January 7, 2013):

> This Court has held that the proper vehicle to assert Eleventh
> Amendment immunity is Federal Rule of Civil Procedure 12(b)(1). *Lee*
> *Testing & Eng'g Inc. v. Ohio DOT*, 855 F. Supp.2d 722, 725 (S.D. Ohio
> 2012) (citing *Johnson v. Wolgemuth*, 257 F. Supp.2d 1013, 1016–17
> (S.D. Ohio 2003)). Rule 12(b)(1) governs motions to dismiss for lack of
> subject matter jurisdiction. The Sixth Circuit has laid out the procedural
> framework for motions brought under that Rule:
>
> > Rule 12(b)(1) motions to dismiss based upon subject matter
> > jurisdiction generally come in two varieties. A facial attack on the
> > subject matter jurisdiction alleged by the complaint merely
> > questions the sufficiency of the pleading. In reviewing such a
> > facial attack, a trial court takes the allegations in the complaint as
> > true, which is a similar safeguard employed under 12(b)(6)
> > motions to dismiss. On the other hand, when a court reviews a
> > complaint under a factual attack, as here, no presumptive

> truthfulness applies to the factual allegations.... [and the] district
> court must therefore weigh the conflicting evidence to arrive at
> the factual predicate that subject matter jurisdiction exists or
> does not exist. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d
> 320, 325 (6th Cir.1990).

*Id.* at *2. A challenge to subject matter jurisdiction based on Eleventh

Amendment immunity is generally considered to be a facial attack. *Id.*; *see also*

*DeSilva v. State Medical Bd. of Ohio*, 2010 WL 1644209, *2 (S.D. Ohio April 23,

2010) (Barrett, J.).

Generally, the Eleventh Amendment "bars all suits, whether for injunctive,

declaratory or monetary relief, against the state and its departments." *Thiokol*

*Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir.1993). When suits

are filed against state officials in their official capacities, they "should be treated

as suits against the State," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), because in an

action against a state officer acting in an official capacity, "the plaintiff seeks

damages not from the individual officer, but from the entity for which the officer is

an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir.1993).

Therefore, "an official-capacity suit is, in all respects other than name, to be

treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166

(1985). In his response, Mr. Hendricks does not seem to dispute this. However,

his complaint as drafted could be read as seeking compensatory and exemplary

damages against all defendants, including Governor Kasich in his official

capacity. Those latter claims are barred by the Eleventh Amendment and they will be dismissed.

An exception set forth in *Ex parte Young*, however, allows for "actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." *Thiokol*, 987 F.2d at 381 (describing the holding of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). As noted above, the focus of Mr. Hendricks' response is that the *Ex parte Young* exception applies here and, therefore, Eleventh Amendment immunity does not operate to bar his claims for declaratory or injunctive relief against Governor Kasich in his official capacity.

Under the *Ex parte Young* exception, "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law . . . [because] it is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507–08 (6th Cir. 2008) (quotation marks and internal citations omitted). The Court in *Young* held that a suit challenging the constitutionality of a state official's action in enforcing state law is not considered to be against the State, so Eleventh Amendment immunity does not apply. *Ex parte Young*, 209 U.S. at 150–56. "In order to qualify under *Ex parte Young*, [] an action must seek prospective relief to end a continuing violation of federal law." *Carten v. Kent State University*, 282 F.3d 391, 395 (6th Cir. 2002).

The exception does not, however, extend to any retroactive relief. *Quern v. Jordan*, 440 U.S. 332, 338 (1979). That is, if a complaint against a state official is "based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to them, . . . it . . . does not come under the doctrine of *Ex parte Young*." *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003) (dismissing plaintiffs' claim for injunctive relief from state officials after determining their complaint was based entirely on past acts).

The test for determining whether the *Ex parte Young* exception applies is a "straightforward" one. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The court considers "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (alteration in original) (citation omitted); *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003). The focus of the inquiry remains on the allegations only; it "does not include an analysis of the merits of the claim." *Verizon*, 535 U.S. at 646; *Dubuc*, 342 F.3d at 616. Moreover, the *Ex parte Young* fiction does not apply unless the officer sued has "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157.

In Paragraph 21 of the complaint under the heading "Parties to the Action," Mr. Hendricks alleges the following:

> Defendant John Kasich is the Governor of the State of Ohio. In an effort to cut the State of Ohio's deficit, Defendant Kasich implemented cost cutting measures that are having a direct and

> detrimental effect on the medical care received by all inmates in the custody and/or care of Ohio prisons. He has caused, created, authorized, condoned, ratified, ordered, approved, and/or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and/or practices alleged in this complaint.

In Paragraph 95 under the heading "First Cause of Action (42 USC §§1983, 1988; First, Eighth and Fourteenth Amendments)," Mr. Hendricks further alleges as follows:

> Defendant Kasich, as the Governor of Ohio and in an effort to cut the State of Ohio's deficit, implemented cost cutting measures that are having a direct and detrimental effect on the medical care received by all inmates in the custody and/or care of Ohio prisons.

Based on these allegations, Governor Kasich argues that Mr. Hendricks' complaint is based entirely on past conduct and therefore does not fall within the exception outlined in *Ex Parte Young*. The Court agrees. "[I]njunctive relief, even prospective injunctive relief, against state officers named in their official capacities 'should not be granted if the relief is tantamount to an award for past violation of federal law, even though styled as something else.'" *Boysen v. Holbrook*, 2007 WL 852198 (S.D. Ohio March 19, 2007) (Marbley, J.), *quoting Barton v. Summers*, 293 F.3d 944, 949 (6th Cir. 2001).

Mr. Hendricks simply is not seeking prospective relief against Governor Kasich here even though his complaint sets forth claims for injunctive relief. For example, Mr. Hendricks seeks an injunction ordering defendants to "immediately cease all forms of denial of medical care based on costs," implement a

constitutional policy that allows inmates to attend and participate in the "collegial review' process," provide any needed medical care and devices, and "immediately cease use of the urgent care clinic at Franklin Medical Center." *See* Complaint, ¶9, p. 17.  However, the Court is required to examine his claims substantively rather than by the form in which they appear. *Brown v. Strickland*, 2010 WL 2629878, *4 (S.D. Ohio June 28, 2010), *citing Lawrence v. Welch*, 531 F.3d 364 (6th Cir. 2008).

The substance of Mr. Hendricks' claims relates to the alleged denial of medical treatment in the past which may or may not have resulted from alleged budget cuts instituted by Governor Kasich.  In order for Mr. Hendricks to prevail on any claim against Governor Kasich, the Court would have to issue a declaration that Governor Kasich's alleged cost cutting measures were taken in violation of Mr. Hendricks' Eighth Amendment rights.  Only upon such a finding could the Court conclude that Mr. Hendricks would be entitled to any injunctive relief he may be seeking.  Stated another way, Mr. Hendricks is seeking relief "for a past, one-time decision of the [Governor] that purportedly violated [his] federal constitutional rights." *S & M Brands, Inc.*, 527 F.3d at 509.  This is clearly a request for retrospective relief.  The Eleventh Amendment not only bars retroactive relief where the plaintiff is seeking monetary damages, but all retroactive relief. *Id*.

Further, *Young* only "abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's action." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). As explained in *Brown v. Strickland*, 2010 WL 2629878:

> For the *Young* exception to apply, "the state official sued [must] have 'some connection' with the enforcement of the allegedly unconstitutional Act." *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n. 25 (6th Cir. 1982), *quoting Ex parte Young*, 209 U.S. at 157); *Kelley v. Metropolitan County Bd. of Educ.*, 836 F.2d 986, 990–91 (6th Cir. 1987) (declining to apply *Young* when defendants were not threatening to enforce any unconstitutional act). Courts have not read *Young* expansively. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) ("While the rule permitting suits alleging conduct contrary to 'the supreme authority of the United States' has survived, the theory of *Young* has not been provided an expansive interpretation."). Furthermore, the Sixth Circuit has expressly held that the phrase "'some connection with the enforcement of the act' does not diminish the requirement that the official threaten and be about to commence proceedings." *Children's Healthcare is a Legal Duty, Inc.*, 92 F.3d at 1416, *citing Ex parte Young*, 209 U.S. at 155–56).

*Id.* at *3. In this case, to the extent that the complaint could be read as seeking injunctive relief against Governor Kasich, Mr. Hendricks has not alleged that Governor Kasich has any responsibility for the enforcement of any law or policy relating to the provision of medical care for Ohio prison inmates.

For all of these reasons, the Court will grant Governor Kasich's motion to dismiss as it relates to any claims for monetary, declaratory, or injunctive relief against Governor Kasich in his official capacity.

## C.

The Court will now consider the motion to dismiss as directed to Mr. Hendricks' claims against Governor Kasich in his individual capacity.  As discussed above, Governor Kasich contends that the complaint fails to state a claim against him for the violation of Mr. Hendricks' Eighth Amendment rights. Fed. R. Civ. P. 12(b)(6) provides that the Court may, upon motion, dismiss a claim for relief asserted in any pleading for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 8(a) requires the party pleading a claim for relief to make a "short and plain statement of the claim showing that the pleader is entitled to relief."  When evaluating such a claim in the context of a Rule 12(b)(6) motion, the Court must ordinarily accept as true all of the well-pleaded factual allegations of the complaint.  However, Rule 8(a) has been interpreted to require that the pleader allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  Moreover, the factual allegations themselves "must be enough to raise a right to relief above the speculative level . . . ." *Id*.

*Twombly* established a test of "facial plausibility," replacing the prior standard, announced in *Conley v. Gibson*, 355 U.S. 41 (1957), under which a complaint was able to withstand a motion to dismiss if there were any possibility that the pleader could prove a viable claim for relief.  Expanding upon *Twombly's*

"facial plausibility" test, the Supreme Court, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* reiterated the principle that legal conclusions, couched as factual allegations, need not be accepted as true, and that the mere recital "of the elements of a cause of action, supported by mere conclusory statements," cannot save a claim from dismissal under Rule 12(b)(6). *Id.* at 1950.  Further, *Iqbal* allows the reviewing court "to draw on its judicial experience and common sense" when deciding if it is plausible that the pleader can, based on the facts alleged, obtain any relief.  *Id.*  It is still true, however, that pro se complaints are construed liberally in favor of the pleader, even though they, too, must satisfy the "facial plausibility" standard articulated in *Twombly*. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010); *see also Erickson v. Pardus*, 551 U.S. 89 (2007).  It is with these standards in mind that the instant motion will be decided.

To demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs.  There is both an objective and a subjective component to a cruel and unusual punishment claim.  *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009). The objective component requires a plaintiff to demonstrate that the medical need was "serious."  *Id.*  A serious medical need is "one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). To meet the subjective component, a complaint must plead facts which show that the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Id.* at 837.

The § 1983 claims against Governor Kasich in his individual capacity fail because Mr. Hendricks has not alleged facts showing that Governor Kasich personally exhibited deliberate indifference to his serious medical needs. Further, Mr. Hendricks has not alleged that Governor Kasich was even aware of acts by other persons that allegedly violated Mr. Hendricks' Eighth Amendment rights. It is well-established that respondeat superior cannot be the basis of a § 1983 claim. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (*quoting Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984)) (internal quotation marks omitted).

In his response, Mr. Hendricks indicates that, from his perspective, he is

not making a respondeat superior argument.  Rather, as Mr. Hendricks sees his

argument, because Governor Kasich signed budget cuts into law, he is directly

responsible for any  unconstitutional denial of medical care resulting from these

budget cuts.  In this regard, as the Court understands Mr. Hendricks' argument,

he relies on *Monell* to liken Governor Kasich to a municipality which can be held

liable for constitutional violations inflicted by its policies.   Mr. Hendricks'

attempted analogy is unavailing, however.   The complaint does not allege that

Governor Kasich took any action, including budget cuts, specifically designed to

deny Mr. Hendricks' medical care.  The fact that Governor Kasich signed budget

cuts into law, without more, simply is insufficient to establish that, in doing so, he

was acting with deliberate indifference as contemplated by the Eighth

Amendment.  *See DePew v. Krisher*, 2012 WL 1340385 (S.D. Ohio April 18,

2012), Report and Recommendation Adopted by 2012 WL 2890978 (S.D. Ohio

July 16, 2012) (Marbley, J.); *Davis v. Strickland*, 2009 WL 2047891 (S.D. Ohio

July 7, 2009), Report and Recommendation Adopted by 2009 WL 2998980 (S.D.

Ohio September 15, 2009) (Frost, J.).

The Court notes that in at least two other paragraphs of the complaint

(¶¶92 and 94), Mr. Hendricks alleges actions taken by "Defendants."  To the

extent that these allegations could be construed as directed to Governor Kasich,

they are too conclusory to survive a motion to dismiss. *See Iqbal*, 556 U.S. at

664; *Twombly*, 550 U.S. at 555, 567.  Consequently, the motion to dismiss will be

granted as to all claims against Governor Kasich in his personal capacity.

### III. Disposition

For the reasons stated above, Plaintiff's objections (ECF No. 16) to the Report and Recommendation (ECF No. 4) are **OVERRULED**.  The Report and Recommendation is **ADOPTED AND AFFIRMED**.   The motion to dismiss (ECF No. 21) is granted as to all claims against Governor Kasich.  The claims against Governor Kasich in his official capacity are dismissed without prejudice for lack of subject matter jurisdiction, and the claims against him in his individual capacity are dismissed with prejudice.

**IT IS SO ORDERED**.

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**