IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Benjamin Hendricks, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 2:12-cv-729 |
| | : | JUDGE MICHAEL H. WATSON |
| John Kasich, et al., | | Magistrate Judge Kemp |
| Defendants. | : | |

ORDER

This matter is before the Court on Benjamin Hendricks' motion to amend the complaint. Defendants Andrew Eddy, John Gardner, and Gary Mohr have filed a response and the motion has been fully briefed. For the following reasons, the motion to amend will be granted in part and denied in part.

I. Background

This case originally was filed by Mr. Hendricks and Robert Austin as a putative class action naming several defendants including Ohio Governor John Kasich, Gary Mohr, Andrew Eddy, John Gardner, Mona Parks, Dr. Hale, Dr. Khan, Anthony Ayres, and 50 John/Jane Doe defendants. It was assigned to Magistrate Judge Abel for an initial screening. By Report and Recommendation issued October 23, 2012, Magistrate Judge Abel directed the Clerk to open a separate case for Mr. Austin and recommended that defendants Parks, Hale, Khan, and Ayres be dismissed because the complaint failed to state a claim against them. After the cases were severed, this case was reassigned to the undersigned Magistrate Judge based on its relation to pending cases 2:11-cv-399 and 2:11-cv-40.

Governor Kasich and Mr. Hendricks both objected to the Report and Recommendation. Governor Kasich also filed a motion

to dismiss. By order dated May 21, 2013, the Court adopted the Report and Recommendation and granted Governor Kasich's motion to dismiss. As it relates to the current motion, the order affirmed that the complaint failed to state a claim against defendants Parks, Hale, Khan and Ayres because there were no allegations that these defendants played a role in any denial of Mr. Hendricks' medical treatment. Further, with respect to some of Mr. Hendricks' claims, the Court found that the complaint failed to give fair notice of the claims to any named defendant. The order also denied Mr. Hendricks' motion to amend, citing to then controlling Sixth Circuit precedent which held that a complaint subject to screening could not be amended to avoid dismissal under 1915(e) and 1915A.

Mr. Hendricks filed a motion for relief from judgment on July 25, 2013. On September 6, 2013, he filed a motion to withdraw that motion and replace it with a motion to amend the complaint. On March 31, 2014, the Court issued an order granting in part the motion for leave to withdraw to the extent that Mr. Hendricks sought to withdraw his motion for relief from judgment. That order did not address the merits of Mr. Hendricks' motion for leave to amend.

## II. Legal Standard

In LaFountain v. Harry, 716 F.3d 944 (6th Cir. 2013), the Court of Appeals for the Sixth Circuit overruled, in part, McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir. 1997), which had long held that, when the Prison Litigation Reform Act requires dismissal of a prisoner's claim, a district court cannot grant leave to amend. In LaFountain the Court of Appeals expressly held that "under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." Id. at 951. Consequently, the Court will evaluate Mr. Hendricks' motion to amend under the

standards set forth in Rule 15(a).

Fed.R.Civ.P. 15(a)(2) states that when a party is required to seek leave of court in order to file an amended pleading, “[t]he court should freely give leave when justice so requires." The United States Court of Appeals for the Sixth Circuit has spoken extensively on this standard, relying upon the decisions of the United States Supreme Court in Foman v. Davis, 371 U.S. 178 (1962) and Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971), decisions which give substantial meaning to the phrase "when justice so requires." In Foman, the Court indicated that the rule is to be interpreted liberally, and that in the absence of undue delay, bad faith, or dilatory motive on the part of the party proposing an amendment, leave should be granted. In Zenith Radio Corp., the Court indicated that mere delay, of itself, is not a reason to deny leave to amend, but delay coupled with demonstrable prejudice either to the interests of the opposing party or of the Court can justify such denial.

Expanding upon these decisions, the Court of Appeals has noted that:

> [i]n determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994) (citing Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau, 786 F.2d 101, 103 (2d Cir. 1986)). See also Moore v. City of Paducah, 790 F.2d 557 (6th Cir. 1986); Tefft v. Seward, 689 F.2d 637 (6th Cir. 1982). Stated differently, deciding if any prejudice to the opposing party is “undue” requires the Court to focus on, among other things, whether an amendment at any

stage of the litigation would make the case unduly complex and confusing, see Duchon v. Cajon Co., 791 F.2d 43 (6th Cir. 1986) (per curiam), and to ask if the defending party would have conducted the defense in a substantially different manner had the amendment been tendered previously. General Electric Co. v. Sargent and Lundy, 916 F.2d 1119, 1130 (6th Cir. 1990); see also Davis v. Therm-O-Disc, Inc., 791 F. Supp. 693 (N.D. Ohio 1992).

The Court of Appeals has also identified a number of additional factors which the District Court must take into account in determining whether to grant a motion for leave to file an amended pleading. They include whether there has been a repeated failure to cure deficiencies in the pleading, and whether the amendment itself would be an exercise in futility. Robinson v. Michigan Consolidated Gas Co., 918 F.2d 579 (6th Cir.1990); Head v. Jellico Housing Authority, 870 F.2d 1117 (6th Cir.1989). The Court may also consider whether the matters contained in the amended complaint could have been advanced previously so that the disposition of the case would not have been disrupted by a later, untimely amendment. Id.

III. The Motion to Amend

Mr. Hendricks' motion to amend, like most of Mr. Hendricks' filings in this Court, contains a very lengthy and highly detailed recitation of generally relevant legal principles complete with a multitude of footnotes. However, it contains a very minimal discussion of how these legal principles apply to his particular case. Here, for example, Mr. Hendricks does not explain in his motion what his specific proposed amendments are, but leaves the Court and the opposing parties with the task of parsing them out of the thirteen-page proposed amended complaint on their own. The Court's review of the proposed amended complaint reveals the following.

Mr. Hendricks seeks to add four previously unnamed

defendants - Steve Huffman, Stuart Hudson, Christine Hall, and Dr. Christiansen, also referred to as Dr. Christenson. He also seeks to revive his previously dismissed claims in this case relating to his medical conditions, which are exceedingly well-documented in the records of this Court, including a shoulder prosthesis, ventral and parastomal hernias, pain management, Crohn's disease and diversion colitis. The Court's reading of the proposed amended complaint is borne out by Mr. Hendricks' reply which contains, in response to defendants' opposition, his more specific intentions in seeking to amend.

Defendants have opposed Mr. Hendricks' proposed amendments on futility grounds. They contend that Mr. Hendricks has failed to state plausible claims for relief and that he has pled nothing more than legal conclusions with respect to many of his claims. The Court will examine the proposed amendments in detail below.

A. The Proposed New Defendants

With respect to proposed defendants Huffman, alleged to be the Assistant Director of the ODRC, and Hudson, alleged to be the Chief of the ODRC Bureau of Medical Services, the proposed amended complaint contains the following allegations at paragraphs 11 and 12:

> ... Defendant ... ordered the ODRC/PCI medical staff to stop all hospital trips and surgeries unless it concerned a life or death situation. This general policy was part of a cost-saving approach and resulted in the denial of medical treatment. Defendant ... at least caused, created, authorized, condoned, ratified, ordered, approved, and/or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs, and/or practices alleged in this complaint. Furthermore, even assuming Defendant .. . was unaware of Hendricks' specific situation, such a policy creates significant risks for prison inmates in general.

Mr. Hendricks also has proposed an amendment relating to his

allegations directed to Gary Mohr. Paragraph 10 of the proposed amended complaint makes the same allegations against Mr. Mohr as set forth above. These allegations are somewhat different than those made against Mr. Mohr in the original complaint.

With respect to proposed defendants Hall and Christiansen, the proposed amended complaint contains the following allegations at paragraphs 17 and 18:

> ... Defendant ... is a member of the "Collegial Review" team. Defendant ... ordered the ODRC/PCI medical staff to stop all hospital trips and surgeries unless it concerned a life or death situation. This general policy was part of a cost-saving approach and resulted in the denial of medical treatment. Defendant ... at least caused, created, authorized, condoned, ratified, ordered, approved, and/or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs, and/or practices alleged in this complaint. Furthermore, even assuming Defendant was unaware of Hendricks' specific situation, such a policy creates significant risks for prison inmates in general.

B. Eighth Amendment Claims

With respect to his proposed amendments to revive his claims regarding his numerous medical conditions, Mr. Hendricks seeks to pursue these claims against previously dismissed defendants Arthur Hale, Inam Khan, and Anthony Ayres as well as newly proposed defendants Hall and Christiansen. Mr. Hendricks does not appear to be attempting to amend his complaint to include any claims against previously dismissed defendant Mona Parks. The Court will examine the proposed amendments relating to each of Mr. Hendricks' medical conditions one by one.

i. Shoulder Prosthesis

Mr. Hendricks' allegations regarding his left shoulder prosthesis are set forth in paragraphs 31 through 40 of the original complaint. The relevant allegations are set forth in

paragraphs 22 through 35 of the proposed amended complaint. The proposed amendments appear in paragraphs 29 through 35, and are intended to replace paragraphs 38 through 40 of the original complaint. The relevant paragraphs in the original complaint state as follows:

> 38) After two (2) years of complaints and being told that it was his own fault and his shoulder was still not repaired, Hendricks finally had a "meeting" with Tony Ayres (H.C.A./M.O.M. at Pickaway Correctional Institution), Connie Ostrander (Nurse Supervisor at Pickaway Correctional Institution), Missy Rousch (Q.I.C. at Pickaway Correctional Institution), Dr. Khan (Treating Physicial at Pickaway Correctional Institution), and Dr. Hale (Chief Medical Officer at Pickaway Correctional Institution) and was informed that his shoulder was deemed inoperable by Defendants Eddy and Gardner.
>
> 39) Hendricks informed them that this was not completely true and told them about his prior consults, who the surgeon was that performed the original surgery in 2002, the name of the implant, and even offered to provide them with the surgical report of his orthopedic history.
>
> 40) Hendricks was told that the problem would be "looked into" and he would be informed about a decision when was made which was subsequently denied.

The Court previously held that Mr. Hendricks' allegations regarding his shoulder prosthesis stated a claim against defendants Eddy and Gardner but did not state a claim against defendants Ayres, Khan, or Dr. Hale. In an effort to remedy this deficiency, Mr. Hendricks has included additional allegations in his proposed amended complaint. These allegations are as follows:

> 29) After two years of complaints, pain, instability, and numerous dislocations Hendricks had a meeting with Defendants Hale, Khan, Ayres, and non-parties Connie Ostrander and Mary Rousch to discuss his various medical ailments and treatments.

30) Hendricks was informed that during collegial review meetings, Defendants Gardner, Eddy, Hall, Christenson, Hale, Khan, and Ayres decided that Hendricks was not amenable for surgery and instituted an Alternate Plan of Care ("Alt. POC") which amounts to no treatment at all.

31) Hendricks informed Defendants Hale, Khan, Ayres, and non-parties Connie Ostrander and Mary Rousch that if his injury is not addressed soon, among other complications, his shoulder injuries may not be repairable.

32) Hendricks told them of his prior surgery in 2002 and offered copies of the surgical report and his orthopedic history from prior to his incarceration and was told they were not relevant to the current medical problem.

33) Hendricks informed Defendants Hale, Khan, Ayres, and non-parties Connie Ostrander and Mary Rousch that he had serious concerns of permanent physical injury if surgery was not performed and he was told that they would again look into the problem.

34) Hendricks was subsequently informed that Defendants Gardner, Eddy, Hall, Christenson, Hale, Khan and Ayres had again denied surgical intervention and decided on the same Alt. POC which amounts to no treatment at all contrary to Ohio Administrative Code ("OAC") 5120-9-60.

35) Hendricks was later informed by another physician that, but for the fact of his incarceration, his shoulder would have been repaired some time ago and more than likely he would have to wait until after he was released from prison.

ii. Crohn's Disease

Mr. Hendricks' allegations relating to his Crohn's disease are set forth in paragraphs 41 through 47 of the original complaint. The Court previously held that Mr. Hendricks' allegations regarding his Crohn's disease did not include the dates he sought treatment, the date treatment was denied, or the identity of the persons denying him treatment. Further, the

Court held that the allegations did not state a claim against defendants Ayres, Khan or Hale for the denial of medical treatment because they merely informed him of an upcoming teleconference to determine a course of treatment. Mr. Hendricks' revised allegations relating to his Crohn's disease are set forth in paragraphs 36 through 50 of his proposed amended complaint.

Paragraphs 36 through 44 of the proposed amended complaint more or less reiterate the allegations relating to this claim in the original complaint, with some additional medical explanation included. The more substantive proposed amendments appear to be additional allegations and are set forth in paragraphs 45 through 50 and state as follows:

> 45) Hendricks eventually saw Dr. Edward Levine over Tele-conference and testing was ordered to determine a course of treatment.
>
> 46) Dr. Levine ordered a flexible sigmoidoscopy, EGD, and ileoscopy to check the status and extent of Hendricks' disease which were finally followed through with in addition to a "capsule study."
>
> 47) Hendricks was initially informed by Defendant Hale that everything was "perfectly within normal limits" with the exception of an anal stricture and that the capsule study showed "nothing significant."
>
> 48) Months later Hendricks again saw Dr. Levine over Tele-conference where he was informed that the testing and capsule study was not within the normal limits and in fact showed ulceration in his small intestines consistent with Crohn's disease contrary to Defendant Hale's earlier assertion and ordered Humira/adalimumab for treatment in addition to a surgical consult with Dr. Harzman(?) for either ileal-anal anastomosis or proctectomy to address issues/problens with Diversion Colitis.
>
> 49) A couple of days later Hendricks saw Dr. Hale to discuss the Tele-conference with Dr. Levine and was informed that there was little to no chance of himself,

> Gardner, Eddy, Hall, Christenson, and Ayres approving this course of treatment and that more likely an Alt. POC would be ordered which amounts to no treatment at all contrary to OAC 5120-9-60.
>
> 50) Surprisingly, Hendricks was finally approved for the treatment of his Crohn's disease with Humira/adalimumab for ninety (90) days and an order was placed with the pharmacy for the Humira/adalimumab thereby hopefully ending the pain, suffering, bleeding, and other medical complications he has suffered at the hands of Defendants Gardner, Eddy, Hall, Christenson, Hale, Khan, Ayres and John/Jane Does for which he is entitled to damages.

iii. Diversion Colitis

Mr. Hendricks' allegations regarding his diversion colitis are set forth in paragraphs 48 through 53 of the original complaint. The Court previously concluded that Mr. Hendricks' allegations did not include the dates he sought and was refused enemas to treat this condition or the name of the person who denied him the treatment prescribed by the specialist. Mr. Hendricks has set forth his claim relating to his diversion colitis at paragraphs 60 through 69 of the proposed amended complaint. Paragraphs 60 through 65 provide some additional factual detail not contained in the original complaint but the more substantive proposed amendments begin with paragraph 65 of the proposed amended complaint. These proposed amendments state as follows:

> 65) After this was resolved enough to allow treatment, Defendants Hale and Khan informed Hendricks that Defendants Gardner, Eddy, Hall, Christenson and John/Jane Doe decided against resuming treatment due to "cost and availability" of the short-chain fatty acid enemas.
>
> 66) Hendricks has continued to suffer pain bleeding, cramps, etc., due to no treatment being provided and Dr. Levine decided to have Hendricks consult with Dr. Harsman(?) for either ileal-anal anastomosis or

proctectomy to address issues/problems with Diversion Colitis.

67) A couple days later Hendricks saw Defendant Hale to discuss the Tele-conference with Dr. Levine and was informed that there was little to no chance of himself, Gardner, Eddy, Hall, Christenson, and Ayres approving this course of treatment and that more than likely an Alt. POC would be ordered which amounts to no treatment at all contrary to OAC 5120-9-60.

68) Hendricks was finally approved for the surgical consult with Dr. Harsman thereby hopefully ending the pain, suffering, bleeding, and other medical complications he has suffered at the hands of Defendants Gardner, Eddy, Hall, Christenson, Hale, Khan, Ayres, and John/Jane Doe for which he is entitled to damages.

69) Hendricks was finally scheduled for the specialty consult and was mistakenly sent to the general surgery clinic before he had seen Dr. Harsman but was also informed by the surgery team that he needed to consult with a respiratory therapist prior to surgery and Dr. Saul (non-party) submitted the specialty consult for approval by Defendants Gardner, Gardner, Hall, Christenson, Hale, Ayres, and John/Jane Doe.

iv. Ventral and Parastomal Hernias

Mr. Hendricks' allegations regarding his ventral and parastomal hernias are set forth at paragraphs 54 through 59 of his original complaint. The Court previously held that Mr. Hendricks had stated a claim only against defendant Gardner but not defendants Parks, Ayres, Khan or Hale for the denial of treatment for his hernias. The allegations of the proposed amended complaint seeking to set forth a claim against defendants in addition to defendant Gardner are set forth at paragraphs 51 through 59. Paragraphs 51 through 54 of the proposed amended complaint essentially reiterate paragraphs 54 through 58 of the original complaint with minor additions. Paragraph 59 of the original complaint states as follows:

59) Again, after several more complaints, Hendricks

> finally had a "meeting" with Tony Ayres (H.C.A./M.O.M. at Pickaway Correctional Institution), Connie Ostrander (Nurse Supervisor at Pickaway Correctional Institution), Missy Rousch (Q.I.C. at Pickaway Correctional Institution), Dr. Khan (Treating Physician at Pickaway Correctional Institution), and Dr. Hale (Chief Medical Officer at Pickaway Correctional Institution) and was informed that a specialty consult would again be submitted which was denied again.

The above paragraph is deleted from the proposed amended complaint and the following paragraphs have been added:

> 55) After two years of complaints and pain Hendricks had a meeting with Defendants Hale, Khan, Ayres, and non-parties Connie Ostrander and Mary Rousch to discuss his various medical ailments and treatments.
>
> 56) Hendricks was informed that during the collegial review meetings, Defendants Garnder, Eddy, Hall, Chrisenson, Hale, Khan and Ayres decided that Hendricks was not amenable for surgery and instituted an Alt. POC which amounts to no treatment at all.
>
> 57) Hendricks informed Defendants Hale, Khan, Ayres, and non-parties Connie Ostrander and Mary Rousch that if his injury is not addressed he would experience further pain and other serious complications due to his untreated Crohn's disease which could result in strangulation.
>
> 58) After yet further complaints and Emergency Room visits at OSUMC Hendricks was informed again that Defendants Gardner, Eddy, Hall, Christenson, Hale, Khan and Ayres decided that Hendricks was not amenable for surgery and instituted the same Alt. POC which amounts to no treatment at all.
>
> 59) Hendricks was later informed by another physician that, but for his incarceration, his hernias would have been repaired some time ago.

v. Pain Management

Mr. Hendricks' allegations regarding his pain management are set forth in paragraphs 60 through 64 of his original complaint and paragraphs 70 through 75 of his proposed amended complaint.

The gist of these allegations is that Mr. Hendricks suffers from several painful medical conditions and that, as a result of these conditions and several others, there is "little to nothing on formulary available for pain management that [he] is able to take." The allegations of the original complaint were found to be insufficient to state a claim against defendants Ayres, Khan or Hale because there were no allegations that pointed to conduct which denied Mr. Hendricks consult with a pain specialist or that otherwise denied him treatment for serious medical needs. Mr. Hendricks sets forth the following allegations in his proposed amended complaint to address this deficiency:

> 71) Because of his extensive allergies, Crohn's disease, and a positive diagnosis of Stevens - Johnson Syndrome there is little to nothing on "formulary" available for pain management that Hendricks is able to take and Defendants Gardner, Eddy, Hall, Christenson, Hale, Khan, and Ayres have refused to provide/approve non-formulary medications.
>
> 72) As such, several physicians at PCI have referred Hendricks for a specialty consult to the Pain Clinic at CMC in an attempt to manage his pain caused by his numerous medical ailments.
>
> 73) These consults were denied with no explanation being provided after two years of complaints and pain Hendricks had a meeting with Defendants Hale, Khan, Ayres, and non-parties Connie Ostrander and Mary Rousch to discuss his various medical ailments and treatments.
>
> 74) Hendricks was informed again that during the collegial review meetings that Defendants Gardner, Eddy, Hall, Christenson, Hale, Khan, and Ayres decided to deny the Pain Clinic consult for Hendricks and instituted an Alt. POC of Neurontin which amounts to no treatment at all.
>
> 75) Hendricks has continued to complain about pain and has been continuously informed that Defendants Garnder, Eddy, Hall, Christenson, Hale, Khan, and Ayres decided to deny the Pain Clinic consults and instituted an Alt. POC of Neurontin which amounts to no treatment at all.

## IV. Analysis

### A. Futility Standard

As noted above, defendants challenge Mr. Hendricks' proposed amendments on grounds of futility. There is some conceptual difficulty presented when the primary basis for a party's opposition to the filing of an amended pleading is that the pleading is futile, *i.e.* that it fails to state a claim upon which relief can be granted. A Magistrate Judge cannot ordinarily rule on a motion to dismiss, see 28 U.S.C. §636(b)(1)(A), and denying a motion for leave to amend on grounds that the proposed new claim is legally insufficient is, at least indirectly, a ruling on the merits of that claim.

At least where the claim is arguably sufficient, it is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss. Even a District Judge may choose to adopt this approach: "The trial court has the discretion to grant a party leave to amend a complaint, even where the amended pleading might ultimately be dismissed." Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md., 715 F.Supp. 578, 581 (S.D.N.Y. 1989). Consequently, rather than determining the actual legal sufficiency of the new claim, in many cases it will suffice to determine if there is a substantial argument to be made on that question and, if so, to allow the amended pleading to be filed with the understanding that a motion to dismiss for failure to state a claim may follow.

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000). A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. See Roth Steel Prods. v. Sharon

Steel Co., 705 F.2d 134, 155 (6th Cir. 1983). A complaint must be construed in the light most favorable to the plaintiff and all well-pleaded facts must be accepted as true. However, a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). Moreover, the factual allegations themselves "must be enough to raise a right to relief above the speculative level ...." Id. The Twombly plausibility standard applies to dismissals of prison cases on initial review under 28 U.S.C. 1915(e)(2)(B)(i). Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). Applying this standard in the context of a motion to amend, a proposed amendment is futile if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

B. Eighth Amendment Standard

The legal principles applicable to Mr. Hendricks' numerous claims regarding the alleged denial of medical treatment are well settled. To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991). This formulation has both a subjective and an objective component. Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial." Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately described as "deliberate indifference." Each of these components requires some elaboration.

It is not always easy to distinguish serious medical conditions from those that are not sufficiently substantial to implicate the Constitutional prohibition against cruel and unusual punishment, and the facts concerning the seriousness of

an inmate's condition are frequently in dispute. In evaluating such claims, courts have given weight to a variety of factors, including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it significantly affects everyday activities, and whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain. See Chance v. Armstrong, 143 F.3d 688, 702-03 (2d Cir. 1998); see also Harrington v. Grayson, 811 F.Supp. 1221 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment. See Napier v. Madison Co., Ky., 238 F.3d 739 (6th Cir. 2001). In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical condition is present. Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004).

As to the subjective element, in Farmer v. Brennan, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." Id. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. Id. Prison officials who know of a substantial risk to the health or safety of an inmate are free

from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994). The Court will examine each of Mr. Hendricks' claims relating to his medical conditions under this standard.

C. Medical Claims

In addressing Mr. Hendricks' claims regarding the alleged denial of medical care, in addition to the above standards, the Court is mindful that the Sixth Circuit Court of Appeals distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). "A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim." Owens v. Hutchinson, 79 Fed.Appx. 159, 161 (6th Cir. 2003).

Before addressing each specific medical condition, however,

the Court also is compelled to note that a theme apparent from the face of Mr. Hendricks' complaints is his belief that cost-cutting measures are responsible for the alleged denial of his medical care. To the extent that his complaint can be read in this way, his limited allegations in this regard fail to provide sufficient support for a deliberate indifference claim. As explained by the Court of Appeals for the Third Circuit in addressing conclusory allegations similar to those made here:

> [T]he complaint's allegation that [plaintiff] was harmed by "policies to save money" is exceedingly conclusory; the complaint does not provide any indication of (1) what the relevant policies are, (2) what basis he has for thinking that "policies to save money" affected his medical treatment, or (3) what specific treatment he was denied as a result of these policies. More fundamentally, the naked assertion that Defendants considered cost ... does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of cost constraints under which law-abiding citizens receive treatment. See Reynolds v. Wagner, 128 F.3d 166, 175 (3rd Cir. 1997)("[T]he deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006)("The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level care, but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." (citations omitted)); Caines v. Hendricks, No. 05-1701, 2007 U.S. Dist. LEXIS 9453, 2007 WL 496876 at *8 (D.N.J. Feb. 9, 2007)("[I]t is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary.").

Winslow v. Prison Health Services, 406 Fed.Appx. 671, 674-75 (3rd Cir. 2011).

As further explained very recently by the court in Kietz v.

Washington County, Pa., 2014 WL 1316129 (W.D. Pa. March 31, 2014) (adopting Report and Recommendation),

> "Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive the most costly treatments or his treatments of choice." Brightwell v. Lehman, No. Civ.A. 03-205J, 2006 WL 931702, at *8 (W.D. Pa. April 10, 2006). In this regard, the Court notes that the Eighth Amendment does not require a prison to provide an inmate "with the most sophisticated care money can buy." United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987). Nor are prison medical officers required to be blind to assessing risks and costs of various treatment options. Furthermore, it is also clear that a dispute regarding whether doctors erred in this cost-benefit assessment, which is the essence of the medical art, sounds in negligence only and may not be case as a constitutional violation. Thus, it is well-settled that an allegation of "mere malpractice of medicine in prison does not amount to an Eighth Amendment violation. This principle may cover ... [an allegedly erroneous calculus of risks and costs. ...." Harrison v. Barkley, 219 F.3d 132, 139 (2d Cir. 2000).

Based on this reasoning, to the extent that Mr. Hendricks suggests that cost considerations support a plausible claim of deliberate indifference with respect to any of his medical conditions, the Court does not agree. The Court will now turn to each individual condition.

i. Shoulder Prosthesis

Turning first to the claim relating to his shoulder prosthesis, the Court previously had found that Mr. Hendricks' complaint stated a claim against defendants Eddy and Gardner based on allegations that they had denied the shoulder surgery that specialists had determined Mr. Hendricks needed. Mr. Hendricks has now refined his allegations to indicate that defendants Hall, Christenson, Hale, Khan, and Ayres also were part of the decision-making process that led to the denial of his

recommended shoulder surgery. He also alleges that these defendants instituted an alternate plan of care to address this long-standing medical condition, but that in his view, this amounts to no treatment at all. He explains in his reply that the alternative plan of treatment is "to do nothing unless it is life threatening." He contends that he has suffered pain, instability and numerous dislocations as a result of having been denied surgery. Consistent with the original complaint, Mr. Hendricks has stated a claim for deliberate indifference against these additional defendants in his proposed amended complaint.

ii. Crohn's Disease

Turning to Mr. Hendricks' claim regarding his Crohn's disease, with which he was diagnosed in 2002, the Court had concluded on initial screening that there was not enough information relating to the alleged denial of treatment and that there were no allegations that defendants Ayres, Khan or Hale denied necessary treatment. Consequently, this claim was dismissed in its entirety. In his proposed amended complaint, Mr. Hendricks provides some additional detail. He asserts that he endured two years of bleeding and pain before he was granted a meeting with defendants Hale, Khan, and Ayres. Dr. Hale led him to believe that the results of a specialist ordered test were normal and "months later" he was informed by the specialist that this was not true. He further asserts that, at this later date, the specialist ordered a specific treatment and Dr. Hale initially told Mr. Hendricks that the course of treatment was unlikely to be approved by defendants Gardner, Eddy, Hall, Christenson and Ayres. Ultimately, although the proposed amended complaint does not state when, the recommended course of treatment was approved. Mr. Hendricks asserts that he hopes this treatment will end the "pain, suffering, bleeding, and other medical complications he has suffered at the hands of [these]

Defendants....”

Defendants contend that the fact that Mr. Hendricks now has been approved for treatment precludes a deliberate indifference claim. The Court does not agree. In his reply, Mr. Hendricks argues that paragraphs 42 and 44 of the proposed amended complaint allege deliberate indifference arising from delay. These paragraphs allege that Mr. Hendricks suffered severe pain and bleeding, complained about these issues, and waited two years for a meeting to determine a course of treatment. Additional paragraphs assert that, once Mr. Hendricks was seen over Tele-conference by a specialist, his access to treatment was then further delayed by Dr. Hale’s alleged actions. Certainly, under specific circumstances, delay in access to medical attention may result in a violation of the Eighth Amendment. See Blackmore v. Kalamazoo County, 390 F.3d 890, 896-898 (6th Cir. 2004). The Court acknowledges that the details surrounding these allegations are somewhat sparse. However, reading Mr. Hendricks’ allegations as a whole, in the light most favorable to him, they are sufficient at this preliminary stage to allow him the opportunity at additional factual development on the issue of the alleged delay in treatment for his Crohn’s disease. Consequently, the motion to amend will be granted as it relates to Mr. Hendricks’ claim regarding his Crohn’s disease.

iii. Ventral and Parastomal Hernias

As for Mr. Hendricks’ claims regarding his ventral and parastomal hernias, the Court concluded on initial screening that he had stated a claim only against defendant Gardner for denying surgery determined by a specialist to be necessary. The allegations of his proposed amended complaint do not indicate that a specialist determined hernia surgery to be medically necessary. Rather, the amended allegations state that Mr. Hendricks was scheduled for the surgery clinic, was unable to

keep that appointment, and was re-evaluated by Dr. Gardner who concluded that surgery was not necessary until the hernias became a life-threatening emergency. Rather than surgery, an alternate plan of care was instituted for Mr. Hendricks by the various defendants. The proposed amended complaint does not elaborate what this alternate plan of care is but Mr. Hendricks' reply states that the plan of care is "to do nothing unless it is life threatening." Beyond this, the proposed allegations merely assert Mr. Hendricks' personal opinions regarding the potential for complications and his belief that the alternate plan of care amounts to no care at all.

A fair reading of the proposed amended claim indicates that Mr. Hendricks has not been denied medical care with respect to his hernias. The allegations indicate nothing beyond a difference of opinion regarding the diagnosis and medical treatment Mr. Hendricks has been provided. As discussed above, this does not state a federal constitutional claim under the Eighth Amendment. Westlake, 537 F.2d 857, 860. Mr. Hendricks' belief that serious complications will result if he does not undergo hernia surgery is simply that - his belief. Moreover, while Mr. Hendricks alleges that he was "later informed by another physician" that his hernias would have been repaired if he were not incarcerated, this allegation does not suggest deliberate indifference to his condition. Mr. Hendricks, as a prisoner, is not entitled to "'unqualified access to health care.'" Jeffries v. Paulius, 2013 WL 5740152, *4 (W.D. Ky. October 22, 2013), quoting Hudson v. McMillian, 503 U.S. 1,8 (1992); see also Winslow v. Prison Health Services, 406 Fed.Appx. 671, 674 (3rd Cir. 2011) ("prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment"). Consequently, the motion for leave to amend will be denied as to

this claim.

iv. Diversion Colitis

With respect to Mr. Hendricks' claim regarding his diversion colitis, the Court found that the original complaint failed to provide sufficient details to provide any named defendant fair notice of the claim. In his proposed amended complaint, Mr. Hendricks has set forth more detail as outlined above. Further, Mr. Hendricks' argues in his reply that the allegations in paragraphs 63 and 65 regarding "pain" he endured for two years before treatment was approved and "pain and bleeding" he endured during an eighteen-month lapse in treatment are sufficient to state a claim relating to this medical condition. Because, as discussed above, a delay in treatment, under certain circumstances, can amount to deliberate indifference, the Court concludes that Mr. Hendricks has stated a claim sufficient to overcome defendants' futility argument. See Blackmore v. Kalamazoo County, 390 F.3d 890, 896-898 (6th Cir. 2004). Consequently, the motion for leave to amend will be granted as to this claim.

v. Pain Management

Finally, with respect to Mr. Hendricks' allegations regarding pain management, the Court concluded on initial screening that Mr. Hendricks had failed to state a claim because he did not allege that any named defendant denied him a pain specialist consult or otherwise denied him treatment. In his proposed amended complaint, he alleges that defendants Gardner, Eddy, Hall, Christenson, Hale, Khan and Ayres denied his pain clinic consult and have prescribed an alternate plan of care that consists of the drug Neurontin, which he contends amounts to no treatment at all. However, these allegations indicate that Mr. Hendricks has received medical attention, he simply has not gotten what he wants. As such, these allegations demonstrate a

difference of opinion but do not create a constitutional claim. Westlake, 537 F.2d at 860 n.5. Further, to the extent that Mr. Hendricks suggests this treatment amounts to no treatment at all, this conclusory statement is insufficient to state a claim. Consequently, the motion for leave to amend will be denied as to this claim.

D. Remaining Claims

Mr. Hendricks' proposed amended complaint also attempts to set forth a claim against defendants Mohr, Huffman, and Hudson in both their individual and official capacities for their roles in the implementation of a policy of cost-cutting measures allegedly resulting in the denial of medical treatment. Mr. Hendricks alleges, using language attempting to assert a supervisory liability claim, that these individuals, in their roles with the ODRC, directed medical staff to "stop all hospital trips and surgeries unless it concerned a life or death situation." Mr. Hendricks acknowledges that these defendants may have been unaware of his specific situation but asserts that, nevertheless, they were aware of the risks of the policy.

Allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of *respondeat superior*, are necessary in order to hold an individual defendant liable under §1983. Monell v. Department of Social Services, 436 U.S. 658 (1978). Although there are other legal claims that can properly be asserted against a supervisor simply because someone under his or her supervision may have committed a legal wrong, liability for constitutional deprivations under 42 U.S.C. §1983 cannot rest on such a claim. Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that

defendant and dismissal is warranted. See also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Mr. Hendricks has not alleged the personal involvement of any of these defendants in the conduct underlying any of his claims. In fact, he specifically recognizes in the proposed amended complaint that these defendants may have been unaware of his specific situation. Consequently, any claims against these defendants in their personal capacities would not survive a motion to dismiss.

To the extent that Mr. Hendricks seeks to sue these defendants in their official capacities, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); see also Grinter v. Knight, 532 F.3d 567, 572 (6th Cir. 2008). In this case, Mr. Hendricks' official capacity claims are construed as against the State of Ohio. Accordingly, his claims for monetary relief are barred by the Eleventh Amendment. Kentucky v. Graham, 473 U.S. 159 (1985).

An exception set forth in Ex parte Young, however, allows for "actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." Thiokol Corp. v. Department of Treasury, Revenue Div., 987 F.2d 376, 381 (describing the holding of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Under the Ex parte Young exception, "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law ... [because] it is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." S & M Brands, Inc. v. Cooper, 527 F.3d 500, 507–08 (6th Cir. 2008) (quotation marks and internal citations omitted). The Court in Young held that a suit challenging the constitutionality of a state official's action in

enforcing state law is not considered to be against the State, so Eleventh Amendment immunity does not apply. Ex parte Young, 209 U.S. 123, 150-156. "In order to qualify under Ex parte Young, [] an action must seek prospective relief to end a continuing violation of federal law." Carten v. Kent State University, 282 F.3d 391, 395 (6th Cir. 2002).

The exception does not, however, extend to any retroactive relief. Quern v. Jordan, 440 U.S. 332, 338 (1979). That is, if a complaint against a state official is "based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to them, ... it ... does not come under the doctrine of Ex parte Young." Gean v. Hattaway, 330 F.3d 758, 776 (6th Cir. 2003) (dismissing plaintiffs' claim for injunctive relief from state officials after determining their complaint was based entirely on past acts).

The test for determining whether the Ex parte Young exception applies is a "straightforward" one. Verizon Md., Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645 (2002). The court considers "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Id. (alteration in original) (citation omitted); Dubuc v. Mich. Bd. of Law Exam'rs, 342 F.3d 610, 616 (6th Cir. 2003). The focus of the inquiry remains on the allegations only; it "does not include an analysis of the merits of the claim." Verizon, 535 U.S. at 646; Dubuc, 342 F.3d at 616.

Mr. Hendricks' complaint is based almost entirely on past conduct. "[I]njunctive relief, even prospective injunctive relief, against state officers named in their official capacities 'should not be granted if the relief is tantamount to an award for past violation of federal law, even though styled as something else.'" Boysen v. Holbrook, 2007 WL 852198, *4 (S.D. Ohio March 19, 2007) (Marbley, J.), quoting Barton v. Summers,

293 F.3d 944, 949 (6th Cir. 2001).

The only claim for which Mr. Hendricks arguably is seeking prospective relief against these defendants is his claim relating to the alleged denial of his recommended shoulder surgery. This is so because it is the only claim where Mr. Hendricks alleges that he continues to be denied recommended medical treatment. Further, this is so even though Mr. Hendricks seeks an injunction ordering defendants to "immediately cease all forms of denial of medical care to the Plaintiff," "[a]llow the Plaintiff to participate in the 'collegial review' process regarding his medical care," "[p]rovide any needed medical care previously denied and currently being denied," and "[p]rovide pain management for the Plaintiff." *See* Amended Complaint, ¶98, p. 12. The Court, however, is required to examine his claims substantively rather than by the form in which they appear. Brown v. Strickland, 2010 WL 2629878, *4 (S.D. Ohio June 28, 2010), citing Lawrence v. Welch, 531 F.3d 364 (6th Cir. 2008).

The substance of all but Mr. Hendricks' shoulder surgery claims relates to the alleged denial of medical treatment in the past which may or may not have resulted from alleged actions of these defendants in ordering medical staff to stop all hospital trips and surgeries unless it concerned a life or death situation. In order for Mr. Hendricks to prevail on these claims against these defendants, the Court would have to issue a declaration that this order was made in violation of Mr. Hendricks' Eighth Amendment rights. Only upon such a finding could the Court conclude that Mr. Hendricks would be entitled to any injunctive relief he may be seeking. Stated another way, with respect to all remaining claims except the claim relating to his need for shoulder surgery, Mr. Hendricks is seeking relief "for a past, one-time decision of the [defendants] that purportedly violated [his] federal constitutional rights." S & M

Brands, Inc., 527 F.3d at 509. This is clearly a request for retrospective relief as it relates to the other remaining claims. The Eleventh Amendment not only bars retroactive relief where the plaintiff is seeking monetary damages, but all retroactive relief. Id. Consequently, any claims against defendants relating to Mr. Hendricks' diversion colitis and Crohn's disease would not survive a motion to dismiss. For this reason, the motion to amend will be denied as it relates to defendants Mohr, Hudson, and Huffman with respect to all claims but the claim relating to Mr. Hendricks' shoulder.

## IV. Order

For the reasons set forth above, the motion for leave to amend (Doc. 32) is granted in part and denied in part as set forth above. Specifically, the motion for leave to amend is granted as it relates to Mr. Hendricks' claims regarding his shoulder prosthesis, Crohn's disease, and colitis. Further, it is granted to the extent that it alleges a claim relating to the denial of Mr. Hendricks' shoulder surgery against defendants Mohr, Hudson, and Huffman in their official capacities. The motion is denied in all other respects. Mr. Hendricks shall file an amended complaint consistent with this order within fourteen days.

## APPEAL PROCEDURE

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set

aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge